IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NAPOLEON STEPHANY, :
    Plaintiff, :
     :
v. : CIVIL ACTION NO. 21-CV-1402
     :
READING POLICE, *et al.*, :
    Defendants. :

**MEMORANDUM**

**RUFE, J.**                                                                                                                                          MAY  21 , 2021

    Napoleon Stephany has filed a handwritten Complaint naming as Defendants "Reading Police" and "St. Jho's Hospital for Hayven."[1] Stephany has also filed a Motion to proceed *in forma pauperis*. For the following reasons, the Court will grant the Motion and the complaint will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.    FACTUAL ALLEGATIONS**

    Stephany alleges that on October 5, 2020, he went to a bank and passed the teller a note saying he wanted money he believed the bank stole from him. (ECF No. 1 at 1.)[2] Police were allegedly called and told him to go with them to jail or go to a hospital. (*Id.*) He was taken to SJMC where he spoke to nurses and physicians. (*Id.*) One of the nurses and a security person told him he had to strip. (*Id.*) A blood draw and urine test were performed allegedly showing Stephany was not under the influence of any substance. (*Id.* at 2.) He was given a paper gown

---

[1] Although not completely clear, Stephany appears to refer to St. Joseph's Medical Center ("SJMC") in Reading, Pennsylvania. He states he was taken to "St. Jhoe's Hospital on 183 near the Reading Airport." (ECF No. 1 at 1.) SJMC is located at 2500 Bernville Road, Reading, Pennsylvania. Bernville Road is State Route 183 and SJMC is approximately 4 miles from Reading Regional Airport.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

and kept in a cold room. (*Id.*) Stephany ran out of the hospital and down a road but was stopped by security, police, and doctors. (*Id.*) He agreed to go back into the hospital but when he asked to see a judge, he was handcuffed and "kidnapped" back into the hospital. (*Id.*)

## II. STANDARD OF REVIEW

Because it appears that Stephany cannot pay the filing fee, the Court grants him leave to proceed *in forma pauperis*.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Stephany is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, that provides in part:

---

[3] In an Order filed on March 31, 2021 (ECF No. 3), Stephany was directed to pay the filing fee for this case or seek leave to proceed *in forma pauperis* by filing a Motion and submitting his prison account statement. He filed a Motion on April 19, 2021 (ECF No. 4.) On April 26, 2021, he was again directed to submit his prison account statement. (ECF No. 5.) On May 14, 2021, Stephany submitted a copy of an inmate communications form he apparently gave to Berks County Jail officials seeking the account statement. (ECF No. 6) The response, returned to him on the same form, lists his prison account transactions. (*Id.*) The Court deems this submission to be substantial compliance with the Court's Order. However, as Stephany is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims Against "Reading Police"

Stephany has named as a Defendant "Reading Police." The Court interprets this to indicate Stephany seeks to assert civil rights claims under § 1983 against the Reading Police Department. Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (per curiam) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability" citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988)); *Hadesty v. Rush Twp. Police Dep't*, Civ. A. No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016). As such, to state a plausible claim against the Reading Police, a complaint must assert that the officers were acting

3

under a policy or practice of the municipality.[4] Because Stephany has not made such a claim, his complaint must be dismissed as to the Reading Police Department.

Next, to the extent Stephany used the term "Reading Police" to indicate he seeks to sue an unknown Reading police officer, the claim also must be dismissed because the Complaint does not specify how any individual officer, known or unknown, personally acted to violate his constitutional rights. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Other than "Reading Police" in the caption of the Complaint, Stephany only mentions the police twice in the body of the complaint. He alleges that "cops" took him to SJMC and that he was stopped by "police" as well as hospital security and doctors when he ran out of SJMC. (ECF No. 1 at 2.) These allegations are insufficient to assert a plausible constitutional violation because Stephany does not provide any specifics to describe what occurred during the "stop," does not allege how his constitutional rights were violated by a police officer, or identify – even by way of an unknown "John Doe Police Officer" – who allegedly acted to violate his rights. However, Stephany's claims against the Reading Police will be dismissed without prejudice as Stephany may possess more specific facts relating to the conduct and identity of the police officers that could support an actionable claim.

B.   **Claims Against SJMC**

As noted, Stephany's reference to "St. Jho's Hospital for Hayven" appears to reference SJMC, which appears to be a private-entity hospital in Reading, Pennsylvania that is part of the

---

[4] A municipality may only be held liable when the unconstitutional conduct by the state-actor "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690.

Penn State Health system.[5] He asserts he was taken to SJMC after the incident at the bank where he was drug tested, told to by a nurse to remove his clothing, and given a paper gown to wear in a cold room. He also claims he was "kidnapped" back into the hospital after he fled, possibly by hospital security. These allegations also fail to state a plausible § 1983 claim.

Only persons "acting under color of state law" are liable for damages under § 1983. *West*, 487 U.S. at 48. Whether a private entity is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The test imposed for

---

[5] *See* https://www.pennstatehealth.org/locations/st-joseph/about-us/history (last visited 5/19/2021).

determining whether a private party is exercising a traditionally exclusive public function is "a rigorous standard that is rarely satisfied, . . . for while many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165-66 (3d Cir. 2001) (internal quotations and alterations omitted) (holding that private school at which plaintiff was placed as a minor by the Department of Human Services was not a state actor); *see also Leshko*, 423 F.3d at 347 (foster parents were not exercising a traditionally exclusive public function and were not state actors despite contractual relationship with social services agency). Given the dearth of allegations concerning Stephany's interaction with SJMC, including any factual allegation that would tend to make plausible a conclusion that SJMC is a state actor under the above tests, the claim against SJMC must also be dismissed.

The Court cannot say, however, that Stephany can never state a plausible § 1983 claim based upon the incident he describes in his Complaint. Accordingly, the Complaint will be dismissed without prejudice, and Stephany will be granted leave to file an amended complaint if he is able to name an appropriate state actor defendant who was personally responsible for an alleged violation of his constitutional rights.

An appropriate Order follows.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**
_____
**CYNTHIA M. RUFE, J.**